**AMENDED**          **UNITED STATES DISTRICT COURT**          **AMENDED**
**FOR THE**
**SOUTHERN DISTRICT OF CALIFORNIA**

### Petition for Warrant or Summons for Offender Under Supervision

**Name of Offender:** Kilran Carzhey Williams (English)          **Dkt. No.:** 19CR00796-001-BAS

**Reg. No.:** 77989-097

**Name of Sentencing Judicial Officer:** The Honorable Cynthia Ann Bashant, Chief U.S. District Judge

**Original Offense:** 18 U.S.C. §2252(a)(2), Attempted Receipt of Images of Minors Engaged in Sexually Explicit Conduct, a Class C Felony

**Date of Revocation Sentence:** August 1, 2025

**Sentence:** 8 months' custody, followed by 9 years' supervised release *(Special Conditions: Refer to Judgment and Commitment Order.)*

**Type of Supervision:** Supervised Release          **Date Supervision Commenced:** January 9, 2026

**Asst. U.S. Atty.:** Amanda Griffith          **Defense Counsel:**    Michael Anthony Hernandez
(Appointed)
(619) 341-3149

**Prior Violation History:** None

**Absconded From Supervision**: No

---

### PETITIONING THE COURT

**TO AMEND THE ORIGINAL ORDER TO SHOW CAUSE DATED, April 3, 2026, TO INCLUDE ADDITIONAL ALLEGATIONS (6, 7, & 8)**

The probation officer believes that the offender has violated the following condition(s) of supervision:

| **CONDITION(S)** | **ALLEGATION(S) OF NONCOMPLIANCE** |
|---|---|
| **(Mandatory Condition)**<br><br>Not commit another federal, state, or local crime. | 1. On or about March 16, 2026, Mr. Kilran Williams committed a robbery, in violation of California Penal Code § 211, as evidenced by the Chula Vista Police Department Report for Case No. 2603669. |
| **(Special Condition)**<br><br>Not initiate any contact (personal, electronic or otherwise) or associate with anyone under the age of 18, unless in the presence of a supervising adult who is aware of the offender's deviant sexual behavior and nature of offense and conviction, with the exception of the offender's biological children, unless approved in advance by the probation officer. | 2. On or about March 16, 2026, Mr. Kilran Williams committed assault with force, in violation of California Penal Code § 245(a)(1), as evidenced by the Chula Vista Police Department Report for Case No. 2603669.<br><br>3. On or about March 16, 2026, Mr. Kilran Williams committed willful cruelty to a child, in violation of California Penal Code § 273(a)(B), as evidenced by the Chula Vista Police Department Report for Case No. 2603669. |
| **(Special Condition)**<br><br>Not use or possess any computer, computer-related devices (pursuant to 18 U.S.C. § 1030(e)(1)), which can communicate data via modem, dedicated connections or cellular networks, and their peripheral equipment, without prior approval by the court or probation officer, all of which are subject to search and seizure. The offender must consent to installation of monitoring software and/or hardware on any computer or computer-related devices owned or controlled by the offender that will enable the probation officer to monitor all computer use and cellular data. The offender must pay for the cost of installation of the computer software. | 4. On or about March 16, 2026, Mr. Williams associated with someone under the age of 18, as evidence by the Chula Vista Police Department Report for Case No. 2603669.<br><br>5. On or about March 16, Mr. Williams possessed a device which can communicate data via modem or dedicated connections, specifically a cellular phone, without prior approval of the probation officer. |

***Grounds for Revocation:*** As to Allegations 1 through 3, I have received and reviewed the Chula Vista Police Department Report for Case No. 2603669, which confirms that on the above date, the victim reported that Mr. Williams hit her, strangled her, and took her cellular phone after she refused to give him money. She informed officers that she had been involved in a relationship with Mr. Williams since May 2025. On the date of the incident Mr. Williams met her, along with her three-year-old daughter, at a motel. At the motel, Mr. Williams asked the victim for money. When the victim refused to give him money, he strangled her with his right hand and hit her on her right eye with a closed fist using his left hand. The victim's three-year-old daughter was

reportedly in the room while this occurred and witnessed the violence.  Mr. Williams took the victim's cellular phone, an iPhone 17 Pro Max, before leaving the motel.

Officers noted the victim is in a wheelchair, and had swelling and bruising to the right side of her face.  The victim reported she feared Mr. Williams was going to kill her while she was being strangled.  The victim reported being unable to breathe, had a headache, spots in her vision, dizziness, and neck pain, as a result of the assault.  The victim also reported that previously, Mr. Williams had threatened to kill the victim's brother by shooting him.  The victim also reported she did not know if Mr. Williams owned or had access to a gun since she had never seen him with a gun.

As to Allegation 4, as evidenced by the Chula Vista Police Department Report for Case No. 2603669, Mr. Williams was in a motel room with the victim and her three-year-old daughter.  Mr. Williams was not approved to have contact with the minor.

As to Allegation 5, as evidenced by the Chula Vista Police Department Report for Case No. 2603669, Mr. Williams took possession of the victim's cellular phone, without prior approval of the probation officer.

On May 20, 2026, the undersigned contacted the District Attorney's office and was informed the Chula Vista Police Department Report for Case No. 2603669 was under review with their office.

**(Special Condition)**
Not possess or view any materials such as videos, magazines, photographs, computer images or other matter that depicts "sexually explicit conduct" involving children as defined by 18 USC Â§ 2256(2) and/or "actual sexually explicit conduct" involving adults as defined by 18 USC Â§ 2257(h)(1), and not patronize any place where such materials or entertainment are the primary material or entertainment available.

**(Special Condition)**
Not use or possess any computer, computer-related devices (pursuant to 18 U.S.C. § 1030(e)(1)), which can communicate data via modem, dedicated connections or cellular networks, and their peripheral equipment, without prior approval by the court or probation officer, all of which are subject to search and seizure.  The offender must consent to installation of monitoring software and/or hardware on any computer or computer-related devices owned or controlled by the offender that will enable the probation officer to monitor all computer use and cellular data. The offender must pay for the

6.  On or about September 7, 2024, through April 6, 2026, Mr. Williams used a device which can communicate data via modem or dedicated connections, specifically a cellular phone, without prior approval of the probation officer.

7.  On or about September 7, 2024, through April 6, 2026, Mr. Williams possessed and viewed images depicting actual sexually explicit conduct involving adults, as evidenced by the Forensic Extraction Report dated May 8, 2026.

cost of installation of the computer software.

**_Grounds for Revocation:_** As to Allegations 6 and 7, on April 6, 2026, at the time of Mr. Williams' arrest, he had two cellular phones in his possession. One cellular phone was his pre-approved non-smart phone, a Samsung A15, and the other was an unauthorized and unmonitored cellular phone, a Motorola Razr. Mr. Williams is aware that having unmonitored devices is not in accordance with his conditions of supervised release.

On May 8, 2026, a forensic exam was completed on both of Mr. Williams' cellular phones.

A review of the forensic extraction report on the Motorola Razr revealed the phone setup date was September 7, 2024. Mr. Williams created and used accounts on many sites, including Google, Instagram, Facebook, TikTok, What's App, Snapchat, Native Message, Meet Me, Crush Date, Tango, Telegram messenger, and Signal. Through these sites, Mr. Williams met people and sent and received sexually explicit images and videos. Mr. Williams sent several images of himself naked, either sitting on a bed or standing in front of a mirror, revealing his erect penis. He also sent a video of himself masturbating and ejaculating. The images he received included the following: nude adult females, close up images of vaginas and female breasts, an image of a nude female with a penis penetrating her vagina, an image of a nude male laying on a bed and a nude female sitting on his penis and several close-up images of fingers penetrating vaginas.

| **(Standard Condition)** | |
|---|---|
| The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer. | 8. On or about January 12, 2026, through February 20, 2026, Mr. Williams communicated with Aaron Pittman, a convicted felon, as evidenced by the Forensic Extraction Report dated May 8, 2026. |

**_Grounds for Revocation:_** As to Allegation 8, a review of the forensic extraction report on the Motorola Razr revealed Mr. Williams downloaded Native Text Messenger and used it to communicate with Aaron Pittman. The exchanged messages, images and videos. Mr. Pittman is currently on federal supervised release in the Southern District of California.

**<u>AMENDED</u>**          **VIOLATION SENTENCING SUMMARY**          **<u>AMENDED</u>**


## <u>SUPERVISION ADJUSTMENT</u>

Mr. Williams began his initial term of supervised release in the Southern District of California, on August 21, 2024. During his first term of supervised release Mr. Williams' girlfriend accused him of domestic violence on numerous occasions. She claimed Mr. Williams threatened to kill her and her family by shooting them with a gun. He also made threats to retaliate against her, to include throwing her adult son in front of a bus. During that time Mr. Williams claimed he could not obtain employment due to his mental health and had applied for disability benefits. Due to his lack of employment, he was receiving general relief and was financially supported by his girlfriend.

Also, during his initial term of supervised release, on March 19, 2025, Mr. Williams was found in possession of two unauthorized, unmonitored devices (a cellular phone and a tablet). A forensic exam completed on those devices revealed Mr. Williams was using those devices for almost four months before they were seized. Mr. Williams had been communicating with numerous people through social media and engaging in sexually explicit conversations. In addition, several messages were sent to a person he met while in custody and a person that was in custody. Ultimately, Your Honor revoked Mr. Williams first term of supervision on August 1, 2025.

Thereafter, on January 9, 2026, Mr. Williams commenced his second term of supervised release. He was once again referred to sex offender treatment and mental health services. He was residing with his fiancé, was not employed, had re-applied for disability and was financially supported by his fiancé.

As alleged in this petition, Mr. Williams is under investigation for robbery, assault with force, and willful cruelty to a child. The victim claims she had been dating Mr. Williams for almost a year prior to the assault and had frequent contact with him. She noted they usually met at the hotel she and her minor daughter were living in. The victim claims that when she refused to provide Mr. Williams with money, he assaulted her in the presence of her three year old daughter. She claims Mr. Williams took her cellular phone and left. She also reported Mr. Williams had previously made threats to kill her brother by shooting him. The undersigned reviewed GPS maps which confirm Mr. Williams was at the hotel on the date and time of the alleged incident.

As outlined in the additional allegations included in this petition, the U.S. Probation Office conducted a review of Mr. Williams devices, which were on his person at the time of his arrest. A review of the forensic extraction report of the Motorola Razr revealed several images and videos of an adult female and a child. The child appears to be three years old. It is possible these images and videos are of the victim and her child. Mr. Williams never reported the relationship to the probation officer, nor did he report any contact with minors, and a third-party risk assessment was never conducted.

During the initial interview with Mr. Williams, he admitted gang affiliation with a gang in Chicago known as the Black Disciples. However, Mr. Williams reassured the undersigned that he was no longer affiliated with the gang. During recent office visits and home contacts, the probation officer noticed Mr. William's clothing and jewelry had changed. To investigate the change more, the undersigned asked Mr. Williams about his attire, specifically to the writing on the shoes he was wearing. Mr. Williams admitted it was gang related.

Given all of the alleged violation conduct outlined herein, coupled with Mr. Williams' criminal history and prior conduct while on his previous term of supervision, his adjustment to this term of supervised release is deemed as grossly unsatisfactory.

## OFFENDER PERSONAL HISTORY/CHARACTERISTICS

Mr. Williams is not married but has three children from previous relationships.

He has a lengthy criminal history, beginning at age 17, consisting of convictions for the following: kidnapping, battery/bodily harm, first degree burglary, second degree burglary (two separate convictions), battery on spouse (two separate convictions), trespass, obstructing a public officer, theft (two separate convictions), theft with priors, contributing to the delinquency of a minor, inflicting corporal injury on spouse/cohabitant (two separate convictions), vandalism, and prisoner possessing a weapon. In addition, Mr. Williams was arrested on eleven occasions that did not result in convictions.

Mr. Williams reported he began consuming alcohol and smoking marijuana on a "casual basis" since he was 17 to the time of his arrest for the instant offense.

Mr. Williams is not employed. He reports he has been diagnosed with schizophrenia, paranoia, post traumatic stress disorder, and has seizures. According to Bureau of Prisons intake screening, a psychology provider assessed Mr. Williams in March 2023 and determined he did not meet criteria for any mental health diagnosis. Mr. Williams provided the probation officer a letter dated April 24, 2024, from Family Health Centers of San Diego stating Mr. Williams has been engaged in treatment and adherent to medications. No further information was provided.

## SENTENCING OPTIONS

## CUSTODY

**Statutory Provisions:** Upon the finding of a violation, the court may modify the conditions of supervision; extend the term (if less than the maximum authorized term was previously imposed); or revoke the term of supervised release. 18 U.S.C. § 3583(e)(2) and (3).

If the court revokes supervised release, the maximum term of imprisonment upon revocation is 2 years. 18 U.S.C. § 3583(e)(3).

**USSG Provisions**: USSG §7C1.1(b), p.s., indicates that where there is more than one violation of the conditions of supervised release, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade. In this case the most serious conduct involves Robbery which constitutes a Grade B violation. USSG §7C1.1(a)(2), p.s. Upon a finding of a Grade B violation, it is often appropriate for the court to revoke supervised release. The Court should conduct an individualized assessment, taking into consideration the grade of the violation, to determine whether to revoke supervised release. USSG §7C1.3(b)

A Grade B violation with a Criminal History Category VI (determined at the time of sentencing) establishes an **imprisonment range of 21 to 27 months.** USSG § 7C1.5, p.s. Finally, any term of imprisonment imposed upon revocation of supervised release generally should be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving. USSG §7C1.4(b), p.s.

Pursuant to USSG § 7C1.3 p.s. comment (n.2), upon a report of non-compliance or a finding of a violation, the court may take any appropriate action provided under 18 U.S.C. § 3583, which includes extension, modification, revocation, or termination of supervised release. If revocation is not statutorily required, the court may also consider an informal response, such as issuing a warning while maintaining supervised release without modification, continuing the violation hearing to provide the defendant time to come into compliance, or directing the defendant to additional resources needed to come into compliance.

Finally, any term of imprisonment imposed upon revocation of supervised release generally should be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving.  USSG §7C1.4(b), p.s.

## REIMPOSITION OF SUPERVISED RELEASE

If supervised release is revoked and the offender is required to serve a term of imprisonment, the court may reimpose supervised release upon release from custody.  The length of such a term shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment imposed upon revocation. 18 U.S.C.§ 3583(h).

In this case, the court has the authority to reimpose any term of years or life supervised release, less any term of imprisonment imposed upon revocation.  18 U.S.C. § 3583(k).  The PROSECUTORIAL REMEDIES AND OTHER TOOLS TO END THE EXPLOITATION OF CHILDREN TODAY ACT OF 2003, the Protect Act, Title 1 § 101 amends 18 U.S.C. §  3583 by adding the following: "(k) Notwithstanding subsection (b), the authorized term of supervised release for any offense under section 1201 involving a minor victim, and for any offense under section 1591, 1594(c), 2241, 2242, 2243, 2244, 2245, 2250, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, 2423, or 2425, is any term of years not less than 5, or life."

## RECOMMENDATION/JUSTIFICATION

Mr. Williams is once again before Your Honor for similar conduct of violence, possession of unauthorized and unmonitored devices, possession of actual sexual explicit material, and communication with a convicted felon. In addition, he had unauthorized contact with a minor.

In determining an appropriate sentencing recommendation, the undersigned has considered the 18 U.S.C. § 3553 sentencing factors and goals, the nature of the noncompliance, and the supervisee's individual risks and needs. After a careful and individualized assessment of the case, the undersigned respectfully recommends a 21-month term of imprisonment followed by 9 years of supervised release.  Should Mr. Williams face any additional custodial time, pending the outcome of any pending state/local charges, the undersigned requests Your Honor impose his custodial term to run consecutive to that. The undersigned also recommends the imposition of all standard conditions, as they will allow the probation officer to effectively monitor the supervisee in the community and keep abreast of his activities. The recommended conditions will also facilitate the supervisee's transition into the community, support his rehabilitation, and promote public safety.

Further, the undersigned recommends the Court impose the following special conditions:

1. Submit your person, property, residence, abode, vehicle, papers, computer, social media accounts, any other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of probation/supervised release or unlawful conduct, and otherwise in the lawful discharge of the officer's duties. 18 U.S.C. § 3563 (b)(23); 3583 (d)(3). Failure to submit to a search may be grounds for revocation; you must warn any other residents that the premises may be subject to searches pursuant to this condition.

2. Not possess or view any materials such as videos, magazines, photographs, computer images or other matter that depicts "sexually explicit conduct" involving children as defined by 18 USC § 2256(2) and/or "actual sexually explicit conduct" involving adults as defined by 18 USC § 2257(h)(1), and not patronize any place where such materials or entertainment are the primary material or entertainment available.

3. Not use or possess any computer, computer-related devices (pursuant to 18 U.S.C. § 1030(e)(1)), which are capable of accessing, storing, or transmitting visual depictions of "sexually explicit conduct" involving

children as defined by 18 USC § 2256(2) and/or "actual sexually explicit conduct" involving adults as defined by 18 USC § 2257(h)(1), without prior approval by the court or probation officer, all of which are subject to search and seizure. Such devices include, but are not limited to smart phones, smart watches, video game consoles, digital tablets, I-pods, and not excluding anything else that has the capability of doing so in the future and can communicate data via modem, dedicated connections or cellular networks, and their peripheral equipment. The offender must consent to installation of monitoring software and/or hardware on any computer or computer-related devices owned or controlled by the offender that will enable the probation officer to monitor all computer use and cellular data. The offender must pay for the cost of installation of the computer software.

4. Not accept or commence employment or volunteer activity without prior approval of the probation officer, and employment should be subject to continuous review and assessment by the probation officer.

5. Consent to third party disclosure to any employer, potential employer, concerning any restrictions that are imposed by the court.

6. Reside in a residence approved in advance by the probation officer, and any changes in residence shall be pre-approved by the probation officer.

7. Not loiter within 200 yards of a school, schoolyard, playground, park, amusement center/park, public swimming pool, arcade, daycare center, carnival, recreation venue, library and other places primarily frequented by persons under the age of 18, without prior approval of the probation officer.

8. Not initiate any contact (personal, electronic or otherwise) or associate with anyone under the age of 18, unless in the presence of a supervising adult who is aware of the offender's deviant sexual behavior and nature of offense and conviction, with the exception of the offender's biological children, unless approved in advance by the probation officer.

9. Not have any contact, direct or indirect, either telephonically, visually, verbally or through written material, or through any third-party communication, with the victim or victim's family, without prior approval of the probation officer.

10. Not associate with, or have any contact with, any known sex offenders unless in an approved treatment and or counseling setting.

11. Complete a sex offender evaluation, which may include periodic psychological, physiological testing, and completion of a visual reaction time (VRT) assessment, at the direction of the court or probation officer. If deemed necessary by the treatment provider, the offender shall participate and successfully complete an approved state-certified sex offender treatment program, including compliance with treatment requirements of the program. The Court authorizes the release of the presentence report, and available psychological evaluations to the treatment provider, as approved by the probation officer. The offender will allow reciprocal release of information between the probation officer and the treatment provider. The offender may also be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay. Polygraph examinations may be used following completion of the formal treatment program as directed by the probation officer in order to monitor adherence to the goals and objectives of treatment and as a part of the containment model.

12. Abstain from the use of any and all alcohol, and not be present in (or frequent) places where alcohol is the main item of sale.

13. Participate in a program of mental health treatment as directed by the probation officer, take all medications as prescribed by a psychiatrist/physician, and not discontinue any medication without permission. The court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. May be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay.

14. Reside in a Residential Reentry Center (RRC) as directed by the probation officer for a period of up to 120 days (non-punitive).

15. The offender shall reside in a transitional housing facility designated by the probation officer for a period of up to 90 days, or until the probation officer approves an alternate residence. The transitional housing may be provided through a halfway house, if available, or through lodging arranged by the probation officer, if necessary.

16. Be monitored while under supervision with location monitoring technology at the discretion of the probation officer, which must be utilized for the purposes of verifying compliance with any court-imposed condition of supervision. The offender must pay all or part of the costs of location monitoring based on their ability to pay as directed by the court and/or probation officer.

17. Must not associate with any person who you know, or who a probation officer or other law enforcement officer informs you is a Black Disciples criminal street gang member or any other known criminal street gang member or known participant in a criminal street gang, unless given permission by the probation officer.

18. Must not wear, display, use or possess any insignias, photographs, emblems, badges, buttons, caps, hats, jackets, shoes, flags, scarves, bandanas, shirts or other clothing that are known to represent criminal street gang affiliation, association with or membership in the Black Disciples criminal street gang or any other criminal street gang, unless given permission by the probation officer.

An abstention from alcohol is needed to address Mr. Williams' alcohol abuse; the sex offender-specific conditions are needed given the nature of the offense and to ensure community safety; sex offender treatment and mental health treatment are necessary to work toward rehabilitative goals; location monitoring is needed as Mr. Williams had unapproved contact with a minor; conditions for non-punitive residential reentry center placement and a transitional housing facility are recommended due to Mr. Williams residence instability in the community; and gang conditions are needed given Mr. Williams admitted affiliation and representation with the Black Disciples gang, and to further monitor any potential risk to the community this could bring.

These conditions will be imperative to work toward Mr. Williams' future success and to mitigate risk to the community.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on:  May 20, 2026**

Respectfully submitted:                                   Reviewed and approved:
JENNIFER K. WALKER
CHIEF PROBATION OFFICER

by

Teresa Gustafson                                          Talia R. Devine
U.S. Probation Officer                                    Supervisory U.S. Probation Officer
(619) 409-5150

**AMENDED**              **VIOLATION SENTENCING SUMMARY**              **AMENDED**

1. **Defendant:**  Williams, Kilran Carzhey

2. **Docket No.** (Year-Sequence-Defendant No.)**:**   19CR00796-001-BAS

3. **List Each Violation and Determine the Applicable Grade** (*See* USSG § 7C1.1)**:**

| Violation(s) | Grade |
|---|---|
| Robbery | B |
| Assault with force | C |
| Willful cruelty to a child | C |
| Minor contact | C |
| Possession of an unmonitored device, cellular phone | C |
| Possession and viewing of actual sexual explicit content | C |
| | |
| | |

4. **Most Serious Grade of Violation** (*See* USSG § 7C1.1(b))                          [    B    ]

5. **Criminal History Category** (*See* USSG § 7C1.5)                            [    VI    ]

6. **Range of Imprisonment** (*See* USSG § 7C1.5)                     [  21 to 27 months  ]

7. **Unsatisfied Conditions of Original Sentence**:  List any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (*See* USSG § 7C1.4 p.s. comment (n.4)):

| | | | |
|---|---|---|---|
| Restitution ($) | | Community Confinement | |
| Fine ($) | | Home Detention | |
| Special Assessment | $50.00 | Intermittent Confinement | |

**THE COURT ORDERS:**

    X    THE ORIGINAL ORDER TO SHOW CAUSE DATED APRIL 6, 2026, BE AMENDED TO INCLUDE THE ABOVE ADDITIONAL ALLEGATIONS.

_____ Other _____

_____

_____


The Honorable Cynthia Ann Bashant                        May 21, 2026
Chief U.S. District Judge                                      Date

                                                     rjm